LEE v. HEDENSKOOG.

1. EQUITY—JURISDICTION—MONEY DECREE—ADEQUATE REMEDY AT LAW.

On a bill by the heirs of a deceased partner against the surviving partner praying for an accounting, that a certain contract to purchase plaintiffs' interest be decreed to be a valid and binding obligation upon defendant, and for the appointment of a receiver, where, from counsel's statement at the hearing, it was made clear that all that plaintiffs sought was a money decree, the court of equity had no jurisdiction, and plaintiffs should have been remitted to their action at law.

2. CONTRACTS—PARTNERSHIP — MEETING OF MINDS — CONDITIONAL ACCEPTANCE.

Where an offer by the heirs of a deceased partner to sell deceased's interest in the partnership business to the surviving partner was accepted conditional upon defendant's verifying certain figures, and nothing further was done, the minds of the parties never met, and no valid, binding contract was made.

Appeal from Muskegon; Sullivan, J. Submitted January 17, 1918. (Docket No. 108.) Decided March 27, 1918.

Bill by Charles H. H. Lee and another against Ernest Hedenskoog for an accounting and for other relief. From a decree for plaintiffs, defendant appeals. Reversed, and remanded for an accounting.

*Clink & Farmer,* for plaintiffs.

*Carpenter & Jackson* (*Charles B. Cross,* of counsel), for defendant.

STONE, J. The plaintiffs are the children, and only heirs at law, of Kittie M. Lee, deceased, formerly of Muskegon, Michigan, and are the owners of her entire interest in the property of the firm called the

"Occidental Club." Mrs. Lee, in her lifetime, and the defendant were partners under the firm name and style of the Occidental Club, their business being the conducting of billiard rooms and bowling alleys in the city of Muskegon. The agreement under which they operated is as follows:

"Whereas, a contract has this day been entered into between Ernest Hedenskoog, as first party, and Kittie M. Lee, as second party, covering the business to be known as the Occidental Club. This contract to cover a period of ten years unless otherwise mutually agreed.

"Whereas, Kittie M. Lee, party of the second part, is to furnish Ernest Hedenskoog, party of the first part, five thousand ($5,000) dollars, more or less,

"Now, therefore, it is agreed, between said Ernest Hedenskoog, party of the first part, and Kittie M. Lee, party of the second part, as follows:

"*First.* Second party will advance to said first party such sums as may be required to commence and conduct said business, the sum not to exceed five thousand ($5,000) dollars.

"*Second.* First party, in consideration of said second party's advancing said sum of money agrees that said second party shall be reimbursed the money advanced by her, together with interest at six per cent per annum on such investments, all to be paid out of the earnings of said business and said second party is also to receive in addition thereto one-half of the net profits of said business after said first and second parties have been repaid the amounts advanced by them respectively.

"*Third.* In case said business is to be sold at any time both first and second parties must be agreeable to the transaction and each party must receive all moneys advanced, interests accrued and one-half of the profits up to date of transfer.

"In case such business is not operated at a profit and there should be a loss, each first and second party is to stand one-half the loss.

"*Fourth.* It is mutually agreed between Ernest Hedenskoog, party of the first part, and Kittie M. Lee, party of the second part, of the within contract

that in case of the death of either party the survivor shall have full power to continue the business without interference from the heirs of the deceased. All contracts and rights which the two now hold individually shall be vested in the survivor.

"*Fifth.* In case the death of the party of the first part should occur before the party of the second part, I, Ernest Hedenskoog, assign to Kittie M. Lee, party of the second (part,) the contract between the Occidental Hotel Company and myself (Ernest Hedenskoog), with all the rights I now possess.

"*Sixth.* All debts must be paid out of the earnings of the Occidental Club before any division can be made of the earnings, after which both first and second parties or their heirs shall receive equal amounts share and share alike. These payments to be made in cash the first of every month, leaving cash at the bank to cover incidental expenses until more is earned.

"*Seventh.* This contract is to date back to March 24, 1913, in lieu of one given at that date and be operative from that date.

"Muskegon, Michigan, April 11, 1914.

"ERNEST HEDENSKOOG,
"KITTIE M. LEE.

"Witness:
"SARAH VANORMAN."

Mrs. Lee died on June 24, 1915. On the 12th day of November, 1915, the plaintiffs and defendant made the following instruments, which were signed as indicated below:

"MUSKEGON, MICH., November 12, 1915.

"An audit of the Occidental Club books, shows that Mrs. Kittie M. Lee has an interest in the club amounting to $6,555.50.

"Now, therefore, if upon examination I can prove these figures to be correct, I hereby offer to pay for her interest the sum of $5,000. If her interest is found to be more than $6,555.50 then my offer shall increase proportionately. If her interest is found to be less than $6,555.50, then my offer shall decrease proportionately.

(Signed) "ERNEST HEDENSKOOG.
"Witness: MILTON C. NELLIS."

Upon the back of this paper appears the following:

"The proposition herein made is accepted—bill of sale to be made November 16, 1915, cash payment $3,000—balance to be arranged by two 6 months' 6% notes, satisfactorily endorsed.

(Signed) "KATE B. NELLIS,<br>"CHARLES H. H. LEE.

"Witness:
  "MILTON C. NELLIS."

The undisputed evidence shows that these two instruments were made and signed by the respective parties at the same time.

Defendant claimed, immediately after these papers were signed, as above indicated, that what he had obtained was a mere option to purchase this property. That was denied by the plaintiffs. At all events the matter was never closed, and the business continued to drift along after the making of these papers, as it had before.

On the 28th day of December, 1916, the plaintiffs filed their bill of complaint, setting forth substantially the instruments appearing above, claiming that the last papers operated as a valid contract to sell on the part of the plaintiffs, and to buy on the part of the defendant, the interest which Mrs. Lee's estate had in the Occidental Club. The bill alleged misconduct and mismanagement of the business on the part of the defendant; that he was financially irresponsible, and asked to have a receiver appointed. The bill prayed:

(a) That said defendant should come to a full, fair and just accounting with plaintiffs in respect to the business of said Occidental Club.

(b) That said contract to purchase from plaintiffs their interest in the business of the said club by the said defendant be decreed by the court to be a valid and binding obligation upon said defendant, and in full force and effect.

It prayed for the appointment of a receiver, and for general relief.

Upon the filing of the bill, an order to show cause why a receiver should not be appointed was made, to be heard on December 30, 1916, at 9 o'clock a. m. At that hearing it appears that the answer of the defendant was filed, in which it was admitted that Kittie M. Lee had paid into this business, as alleged in the bill, substantially the sum of $6,555.50, or thereabouts.

The defendant denied the validity of the alleged contract and that he had ever agreed to purchase the interest of the plaintiffs in the business, and set up the circumstances which he claimed constituted the said instrument, signed by the parties, to be an option to purchase, only. He admitted that he had continued to operate and conduct the business since the death of Mrs. Lee; denied all misconduct and mismanagement in the same; alleged that he had kept proper books of account, or had arranged for their keeping; denied that he was financially irresponsible, and described somewhat in detail the amount of property which he had, and claimed the benefit of a demurrer upon the ground that the plaintiffs had no standing in equity, and that their remedy, if any, was in a court of law, and that they had a complete and adequate remedy at law. This answer was supported by numerous affidavits, and upon the hearing on the order to show cause the circuit judge refused to appoint a receiver.

The case came on for hearing upon the pleadings and proofs in July, 1917, and counsel for the plaintiffs made an opening statement of the plaintiffs' claims, and referred to the copartnership existing between Mrs. Lee and the defendant, to the admission of the amount of money which she had paid in, and the heirship of the plaintiffs, and to their coming together and signing the papers of November 12, 1915, which

we have set forth above. The statement of counsel continued as follows:

"Our position is that that made a complete contract, and they ought to be required to keep that contract. That is all that we claim in this matter at this time.

"*The Court:* Is that a fair statement of the issue?

"*Defendant's Counsel:* It is if they are waiving all the other portions of the bill of complaint.

"*The Court:* Go ahead. See if I got this right. All you really claim now is judgment for the sum of $5,-000, with interest from that time to this time?

"*Plaintiffs' Counsel:* That is what our claim is, that a decree of this court should hold that that is a valid, binding contract, and that it is his duty to carry it out, and that a decree should pass against him for that amount.

"*The Court:* And in relation to the property itself?

"*Plaintiffs' Counsel:* The property itself should be held subject to that payment."

Whereupon the case proceeded, and a decree was entered in favor of the plaintiffs holding the alleged contract to be valid, and for $4,828, with interest at 5 per cent. per annum to be computed from the 16th day of November, 1915, giving defendant a credit of $189.90, the amount of a certain check received by one of the plaintiffs, making a total decree of $5,053.24. This decree gave an equitable lien on the physical property of the Occidental Club for the amount of the plaintiffs' claim, and ordered a sale of the same at public auction, with a decree for any deficiency there might be, as in the case of a foreclosure of a real estate mortgage. The defendant has appealed from that decree, and it is claimed by his counsel in this court, among other things, that there was involved at the hearing at most only the right of the plaintiffs to recover a money decree for the amount, if any, payable upon the so-called contract, and that the case stood at the time of the trial, exactly as if that were all there was in the bill; that a court of law was as competent as

a court of equity to determine whether the contract was valid or not; and, if so, to construe the same and give it effect; that the plaintiffs had a full, complete and adequate remedy at law; that the only thing sought by the plaintiffs in their bill as the case finally went to hearing, and as announced by counsel in court, was a money judgment; and that under those circumstances and the rulings of this court the plaintiffs should have been remitted to their action at law. Citing *Bennett* v. *Nichols*, 12 Mich. 21; *Bay City Bridge Co.* v. *Etten*, 36 Mich. 210; *Prescott* v. *Pfeiffer*, 57 Mich. 21; *Mack* v. *Village of Frankfort*, 123 Mich. 421; *Detroit Trust Co.* v. *National Bank*, 155 Mich. 61; *Laubengayer* v. *Rohde*, 167 Mich. 605; *Lannin* v. *Lynn*, 184 Mich. 325.

The second claim of the defendant in this court was that there never was a completed contract between the parties by which the defendant agreed to purchase, and the plaintiffs to sell, to him, the interest owned by Kittie M. Lee in the Occidental Club for a sum agreed upon; that the contract, as claimed, consisted of two parts; a proposition signed by the defendant, and a qualified acceptance signed by the plaintiffs; that the proposition stated a conditional amount to be paid, without stating the time or method of payment; that the so-called acceptance stated a time, to wit: November 16, 1915, and payment to be made by cash $3,000, and by two 6 months' notes with interest at 6 per cent., to be satisfactorily indorsed. It was urged that the so-called acceptance was therefore not an unconditional acceptance, but a qualified acceptance which called for further action on the part of the defendant thereto, before any contract could be made; that it was in effect a new proposition for a different contract. The following cases were cited by defendant's counsel in support of the claim that no contract

200—Mich.—28.

resulted, it being the claim of the plaintiffs that the question of contract or no contract must rest upon these two papers, and upon them alone: *Johnson* v. *Stephenson,* 26 Mich. 63; *Bowen* v. *McCarthy,* 85 Mich. 26; *Wardell* v. *Williams,* 62 Mich. 50; *Wilkin Manfg. Co.* v. *Lumber Co.,* 94 Mich. 158; *United States Heater Co.* v. *Applebaum,* 126 Mich. 296, and cases there cited; *Travis* v. *Watson,* 134 Mich. 249.

1. From the statement made by plaintiffs' counsel upon the hearing it is made very clear, that all that the plaintiffs sought was a money decree. While the plaintiffs had by their bill of complaint prayed for an accounting, yet at the hearing no accounting was claimed, or had, on the partnership affairs. It is very apparent that a court of law was just as competent, as was a court of equity, to award a money judgment, and that plaintiffs could not use the chancery forum for the purpose, simply, of obtaining a money decree. We think the court of equity had no jurisdiction, and that the plaintiffs should have been sent to a court of law, if there was a valid and completed contract, existing between the parties.

2. But it appears to us that the court was in error in holding that any contract was made by the parties, or that the minds of the parties ever met by what was done on November 12, 1915. The instrument signed by the plaintiffs was not an unqualified acceptance of the proposition of the defendant. The language used by the defendant was significant:

"Now, therefore, if upon examination I can prove these figures to be correct, I hereby offer to pay for her interest the sum of $5,000."

It is very clear to us that, by this offer the defendant expected to have time, and opportunity, to make such examination in order to prove the correct amount of the interest of Mrs. Lee in the Occidental Club property; and if her interest was found to be more

than the sum stated, the offer would be increased proportionately; and if found to be less, then his offer was to decrease proportionately.

Upon the hearing of the case the defendant's position was that, in any event, the amount proved against him was much less than $3,000. The so-called acceptance demanded the payment of $3,000 absolutely, and the balance to be arranged by two 6 months' notes, bearing interest at 6 per cent., to be satisfactorily indorsed. What indorsers would be satisfactory was left at large. A bill of sale was to be made on the 16th day of November, four days hence, whereas an examination of the books might necessitate a much longer time. No bill of sale was ever tendered by plaintiffs. That the instrument signed by the plaintiffs was not an unconditional acceptance of defendant's offer is manifest upon the reading of same.

In *Wilkin Manfg. Co.* v. *Lumber Co., supra,* this court quoted, with approval, the following language from Bishop on Contracts, §§ 322, 323:

"If one makes to another an offer, verbal or written, * * * of a sort implying nothing to be done except to accept or decline, and the latter accepts it, adding no qualification, there is thus constituted a mutual consent to the same thing at the same time; in other words, a contract. And the question of the sufficiency of the transaction to work this result is of law for the court. On the other hand, though there is an acceptance, if it is not to the exact thing offered, or if it is accompanied by any conditions or reservations, however slight, in time, or otherwise, no contract is made. It is so, for example, where new terms are introduced; they constitute an offer on the other side, and leave the question open."

In a note to *Eskridge* v. *Glover*, 26 Am. Dec. 349 (5 Stewart & Porter [Ala.], 264), it is said:

"If the acceptance do attach any new condition or fall short of the terms proposed, it is not only insuffi-

cient as an acceptance, but is also a rejection of the proposal, and a termination of the liability of the proposer, to be bound by a subsequent acceptance conforming to the terms of his proposal."

These rules have been frequently applied in this court. We are of the opinion that no valid contract was made on November 12, 1915, and the theory of the bill failed.

There seems to have been nothing in the pleadings or evidence that warranted the court in making the decree a lien upon the entire property of the Occidental Club. The decree below must be reversed, but the case will be remanded to the lower court to enable the plaintiffs to proceed, if they desire, for an accounting to wind up the copartnership that existed between Mrs. Lee and the defendant. The plaintiffs, as Mrs. Lee's sole heirs at law, have a right to such accounting. That court will be able to make any amendments of the bill of complaint that may be necessary for that purpose. The appellant will recover his costs to be taxed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN. JJ., concurred.