ROBINSON *v.* CAMPBELL.

1. EQUITY—JURISDICTION—PLEADING—PROOFS.
    For the chancery court to exercise jurisdiction over matters not of general equity cognizance, but involved in the litigation, for the purpose of full and final adjustment of the whole controversy, some ground of equitable jurisdiction must in each case not only be asserted in the bill but be established upon the hearing.

On right of vendee under executory contract to a lien on the land for the amount paid thereon where the contract fails or is rescinded, see note in 20 L. R. A. (N. S.) 175.

2. SPECIFIC PERFORMANCE—IMPOSSIBILITY OF PERFORMANCE—REME-
DY—EQUITY—JURISDICTION.

Where, at the time plaintiff filed his bill for the specific
performance of a land contract, he knew that defendant
had been compelled by a court decree to convey said land
to another, and that therefore said relief asked was im-
possible of enforcement, and his remedy was an action
at law for damages for breach of contract, equity will
not assume jurisdiction for the purpose of awarding him
money damages.

3. SAME—LIEN IN LIEU OF SPECIFIC PERFORMANCE—PROSPECTIVE
PROFITS—MONEY PAID UNDER CONTRACT.

Although, where the contract fails through the vendor's
default, the generally accepted rule is that the purchaser
is entitled to a lien upon the land for repayment of what
he has paid under the contract, said lien does not extend
to loss of prospective profits, nor will a lien attach where
the vendor has no interest in the land.

Appeal from Wayne; Mayne (Frederick W.), J.,
presiding.    Submitted October 31, 1922.    (Docket
No. 125.)    Decided March 22, 1923.

Bill by Benjamin Robinson against William C.
Campbell and another for specific performance of a
land contract.    From a decree for plaintiff, defend-
ants appeal.    Reversed and remanded.

*John R. Rood*, for plaintiff.

*Robert M. Brownson*, for defendants.

STEERE, J.    Plaintiff filed this bill to compel specific
performance of a land contract given to him by de-
fendant Campbell, reading as follows:

"50.00.        Detroit, Michigan, January 28, 1916.
"Received of Benjamin Robinson fifty dollars on
account of contract for lot one (1) Yeaman's addition
to Highland Park village 105 Hamilton—125 on Glen-
dale—128 on Leslie unrestricted.

"The balance of four hundred and fifty dollars
when contract is signed and twenty-five hundred

dollars four months from date of contract. Seven thousand dollars on or before five years from date of contract. A good and merchantable title to be furnished.

"W. C. CAMPBELL."

The property which he sought to compel conveyance of was also involved in *Craig* v. *Crossman*, 209 Mich. 462, in which Crossman and Campbell were also defendants. In that case Craig sought, and obtained, specific performance of a land contract covering this property.

While that suit was pending, Campbell, who is said to be an attorney, planted the seed for another lawsuit by negotiating this sale of the property to plaintiff. He claims to have then fully advised the latter or his agent of the Craig litigation, which plaintiff denied. Campbell had previously contracted to sell this property to Craig's assignor, and then gave Crossman a deed to it, recorded April 27, 1912, which they claimed was in the nature of a mortgage.

It is undisputed the Craig suit was begun in the circuit court of Wayne county, in chancery, on April 5, 1913. A *lis pendens* of the Craig suit was put on record at the time it was begun. Decree for specific performance was granted to Craig by the circuit court on March 20, 1917, which was appealed to and affirmed by this court on April 10, 1920.

Plaintiff had constructive notice of the Craig suit by virtue of the *lis pendens* when he negotiated for and obtained the agreement of January 28, 1916, from Campbell to sell him the property for $10,000, on payment of $50 down with deferred payments for the balance. He also was a real estate operator running on high speed and says the price he agreed to pay "was way below the market." He claimed that he then knew nothing about the Craig case, and relying on Campbell's agreement for a mer-

222—Mich.—8.

chantable title he promptly and successfully proceeded, with the help of another real estate man named Osterle, to negotiate a sale of the property for $12,600 to W. W. Chapin on payment of $100 down, giving him a memorandum of agreement dated February 19, 1919, somewhat similar but more elaborate than that he received from Campbell. By its terms a second payment of $3,000 was to be made "upon the execution of a land contract, said contract to be executed within ten (10) days after delivery of a Burton abstract, brought down to date, showing a good, merchantable and sufficient title, free and clear of all liens and incumbrances of every kind and character."

Plaintiff then proceeded to investigate the title and submitted an abstract he obtained from Campbell to his attorney, who on reading it advised him of the situation and Campbell's inability to give him a good, merchantable title. His efforts with Campbell produced no results beyond optimistic assurances, which were not satisfying to Chapin who pressed plaintiff to carry out the terms of his agreement with him. Unable to do so he finally obtained from Chapin a cancellation of their contract by returning him the $100 and paying him $75 more. After final demand of Campbell to furnish him a good, merchantable title, contingent on which he offered performance on his part, plaintiff filed this bill asking that Campbell be decreed to settle the imperfections in his title arising from the Craig suit and "furnish to plaintiff a good and merchantable title to said premises," tendering on his part payment and full performance according to their agreement.

This suit asking as ground of equity jurisdiction specific performance of a contract made January 28, 1916, was begun to compel conveyance to plaintiff of a good and lawful title to property which by a deed dated April 9, 1912, and recorded in a liber of deeds

of Wayne county April 27, 1912, Campbell had previously conveyed to Crossman, and for specific performance of a previous contract to convey Craig had, on April 5, 1913, commenced suit against Campbell and Crossman, with a *lis pendens* filed to protect his claim. Plaintiff had both constructive and actual notice of that situation when he brought suit. When this case was heard and decided specific performance of the contract which Craig held, compelling conveyance of the property to him, had been decreed in the circuit court and affirmed on appeal. Concededly the court could not decree specific performance in plaintiff's favor, and his alleged ground of equitable jurisdiction was not established. Neither did it exist when he commenced his suit, for the rights of the parties in the Craig case of which he had notice were then fixed.

Crossman was made a party to this suit under an allegation that while the legal title was in him he held it for Campbell and had given the latter an instrument in writing acknowledging he so held it. Apparently on that theory the bill prays that Campbell be decreed "to settle any claim, interest or lien that the other defendants herein had in and to said premises," and then specifically perform by furnishing plaintiff a good, merchantable title thereto. Yet he knew before filing his bill that if Craig prevailed in his suit specific performance of Campbell's agreement to sell him the property could not be enforced, and the only relief open to him was money damages for breach of contract.

In the *Craig Case* the court squarely held that plaintiff therein was legally and equitably entitled to have conveyed to him by Crossman the premises in controversy "free and clear from all liens, interests or titles of defendant William C. Campbell  *  *  .*  upon payment by plaintiff to defendant John M. Cross-

man of a certain sum of money to be ascertained in manner following," etc.   As said by this court in that case the decree and reasons for it are too lengthy to be detailed, but it is sufficient here to state that under the decree Crossman filed with the clerk of the court a good and sufficient deed of the property to Craig and the latter deposited with the clerk the amount required, which yet remained in custody of the court.   Crossman claimed this money in part payment of $13,000 due him from Campbell as security for which he had held the property.   Plaintiff had no contract or business relations with Crossman. He asserted that he had "no dealings with Mr. Crossman whatsoever, only with Mr. Campbell who represented himself as owner of this property."

It was successfully urged in the court below and is claimed here that the chancery court, having acquired jurisdiction under the equitable allegations in plaintiff's bill, should retain it to declare a lien in his favor upon that fund for the amount of damages the court found he had suffered by reason of Campbell's breach of contract.   The trial court so held, and decreed a money judgment in plaintiff's favor for $3,466 damages made up of the following items:   Difference between the contracted purchase price and fair market value of the property $2,600, paid Chapin for release of contract $75, paid Campbell on purchase price $50, interest from August 19, 1916, to February 26, 1922, $741.   For this a lien was declared on the fund which the court had said in the *Craig Case* should be paid to Crossman after the exact amount had been determined and he had deposited with the court a deed of the property to Craig, which it is conceded Crossman did.

To reach the result arrived at the chancery court must have assumed to pass upon the liability existing between Campbell and Crossman, and entertained the

bill after its alleged grounds for equity jurisdiction failed in order to render a money judgment for damages arising out of a breach of contract with Campbell and declare a vendee's lien upon funds awarded in the *Craig Case* to Crossman with whom plaintiff had no contract relations, or dealings.

For the chancery court to exercise jurisdiction over matters not of general equity cognizance, but involved in the litigation, for the purpose of full and final adjustment of the whole controversy, some ground of equitable jurisdiction must in each case be not only asserted in the bill but established upon the hearing. *Laubengayer* v. *Rohde*, 167 Mich. 605; *Lee* v. *Hedenskoog*, 200 Mich. 427; *Sharon* v. *Fee*, 203 Mich. 152; *James S. Holden Co.* v. *Realty Co.*, 216 Mich. 633; *Brauer* v. *Laughlin*, 235 Ill. 265 (85 N. E. 283); 36 Cyc. p. 747.

Plaintiff contends that even though the equitable grounds alleged may fail the court can nevertheless, if any equitable grounds are proven, retain jurisdiction to declare and enforce a vendee's lien for the amount shown equitably due him, and urges as controlling upon that proposition *Albright* v. *Stockhill*, 208 Mich. 468. In that case the bill was filed to rescind a contract for the trade or exchange of a quantity of real and personal property on the ground of fraud and misrepresentation charged in various particulars by which defendant induced plaintiff to enter into the contract. Many questions of fact and law were involved in that case including violation of the "bulk sales law" which the court discusses at length. While holding that under the complicated state of facts shown plaintiff was not in a position entitling him to a rescission of the entire contract, covering both real and personal property, the court found that under the evidence relating to a stock in trade and fixtures he had established equitable grounds for re-

lief, and retained jurisdiction to grant the same. As to it the court held that if the amount was in question an accounting might be had, saying in part:

"While we do not think that a case for rescission of the entire contract has been made out by the evidence in the case, still it would be most inequitable to compel the plaintiff to lose the entire value of the stock in trade and fixtures, where the creditors are subjecting such property to the payment of their claims. * * *

"To the extent that plaintiff has suffered and been damnified, or shall be damnified, he is entitled to relief against the defendant Stockhill and may have a lien for such sum upon the farm in Ionia county." (Citing cases.)

In that case the court sustained in part the equitable grounds of relief alleged. The facts there involved dealing with a complicated contract of exchange bear little analogy to the facts touching this simple contract· for sale of a single piece of land. Rescission, not specific performance, was the equitable ground of relief there asked and the lien allowed was on land involved in the exchange which the grantor could convey. Here plaintiff's equitable ground for the relief asked was impossible of enforcement or performance in whole or in part both at the time the bill was filed and when it was heard. We are cited to no authority extending the principle of vendee's lien to loss of prospective profits.

When the contract fails through the vendor's default the generally accepted rule is that the purchaser is entitled to a lien upon the land for repayment of what he has paid under the contract. That rule is recognized in our early cases of *Payne* v. *Atterbury,* Harr. Ch. 414; *Lockwood* v. *Bassett,* 49 Mich. 546. We do not find that general rule repudiated or altered in later decisions. A further obstacle to application of the theory of a vendee's lien is that Campbell had no title to or interest in the land

contracted for which the court could subject to a lien.

"Only lands involved in the contract, and only the title and interest of the vendor in such lands are subject to the lien. Lands which the vendor has no legal right to convey are not subject to the lien. There is no lien where there is no land or interest in land to which it may attach." 39 Cyc. p. 2036.

Plaintiff's sole claim is for a money judgment for damages arising from breach of a land contract, specific performance of which is impossible of enforcement. No other subjects of equity jurisdiction are shown.

The decree must therefore be set aside, with costs of this court to defendants, and the case remanded for either transfer to the law side of the court or dismissal, in accordance with the statute for transfer and this opinion.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.